IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

N. YAMHILL STATION, LLC,                       08-CV-755-BR
and REBECCA WARD,
                                               OPINION AND ORDER
          Plaintiffs,

v.

GREAT AMERICAN ALLIANCE
INSURANCE CO.,

          Defendant.


**BRIAN D. CHENOWETH**
Chenoweth Law Group, PC
510 S.W. Fifth Avenue, Fifth Floor
Portland, OR  97204
(503) 221-7598

          Attorneys for Plaintiffs

**JAMES P. MURPHY**
Lybeck Murphy LLP
7525 S.E. 24th St., Suite 500
Mercer Island, WA  98040
(206) 230-4255

          Attorneys for Defendant



1   -   OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#14) for Summary Judgment of Defendant Great American Alliance Insurance Co. and the Objections to Evidence (#25) of Plaintiffs N. Yamhill Station, LLC, and Rebecca Ward.  For the reasons that follow, the Court **GRANTS** the Objections to Evidence of Plaintiffs N. Yamhill Station and Ward for purposes of this Motion and **DENIES** the Motion for Summary Judgment of Defendant Great American.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

From January 1, 1996, to June 30, 2006, John and Joanne Pitfido owned and operated a gas station located at 210 S. Maple Street in Yamhill, Oregon.  On July 1, 2006, the Pitfidos leased the gas station to Accu-Tech Automotive, LLC.  Accu-Tech, in turn, subleased the gas station to Plaintiffs Ward and N. Yamhill Station from July 1, 2006, to November 2006.

The operations at the gas station included storing, dispensing, and selling gasoline and diesel from a 16,000 gallon above-ground storage tank (AST) on the premises.

In October 2006, Ward applied for a Claims-Made Pollution Liability Policy, No. BTA 5612385.  Great American issued the Policy to N. Yamhill Station.  The Policy has an effective date

of October 6, 2006, and covers the property on which the gas station is located.

In November 2006 a leak in the AST was discovered. On September 21, 2007, the Pitfidos filed a Complaint in Yamhill County against Ward, N. Yamhill Station, and others in which they alleged several claims against Ward and N. Yamhill Station arising out of the gasoline leak.

In a letter dated October 25, 2007, Plaintiffs tendered the matter to Great American. In a letter dated November 28, 2007, Great American declined Plaintiffs' tender on the ground that the Policy did not cover the Pitfidos' claims.

On June 23, 2008, Plaintiffs filed a Complaint in this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. In their Complaint, Plaintiffs allege claims for breach of the Policy, request a declaration that their losses are covered by the Policy, and seek a declaration that Great American has a duty to defend and to indemnify Plaintiffs under the Policy.

On February 4, 2009, Great American moved for summary judgment as to Plaintiffs' claim that Great American has a duty to defend Plaintiffs. Great American submitted N. Yamhill Station's "Monthly Fuel Loss Reports" to support its Motion for Summary Judgment. On March 2, 2009, Plaintiffs filed an Objection to the reports on the ground that they are irrelevant.

3   -   OPINION AND ORDER

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving

4   -   OPINION AND ORDER

party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


## DISCUSSION

Great American contends it does not have a duty to defend Plaintiffs against the Pitfidos' claims because the leak in the AST system commenced before the inception date of the Policy and, therefore, is not covered by the Policy.  In addition to opposing Great American's Motion, Plaintiffs object to Great American's submission of N. Yamhill Station's "Monthly Fuel Loss Reports" on the ground that they are irrelevant.

**I.    The law.**

When a federal court sitting in diversity hears state-law claims, the conflicts law of the forum state is used to determine which state's substantive law applies.  *Mail Boxes Etc., USA,*

5   -   OPINION AND ORDER

*Inc. v. Considine*, 229 F.3d 1158, 1158, (9th Cir. 2000)(citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999)). Here it is undisputed that Oregon law applies.

This Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco,* 253 F.3d 461, 473 (9th Cir. 2001). If no decision by the Oregon Supreme Court is available to guide the Court's interpretation of state law, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.* If "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck and Company*, 505 F.3d 993, 995 (9th Cir. 2007)(citing *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001)).

Under Oregon law, "'[w]hether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. Starplex Corp.*, 220 Or. App. 560, 573 (2008). *See also Naumes, Inc. v. Chubb Custom Ins. Co.*, No. 05-CV-1327, WL 54782, at *3 (D. Or. Jan. 5, 2007)(quoting *Ledford*

6   -   OPINION AND ORDER

*v. Gutoski*, 319 Or. 397, 399 (1994)). "An insurer has a duty to defend an insured if allegations made against the insured could, without amendment, impose liability for conduct covered by the insured's policy." *Naumes, Inc.*, WL 54782, at *3. *See also Marleau v. Truck Ins. Exch.*, 333 Or. 82, 89 (2001). When "determining whether the insurer has a duty to defend, [the court] looks exclusively at the facts alleged in the complaint in the underlying action." *Western Equities, Inc. v. St. Paul Fire & Marine Ins. Co.*, 184 Or. App. 368, 433 (2002). "If the complaint is ambiguous with respect to whether the allegations are covered by the insurance policy, [the court] resolve[s] that ambiguity in favor of the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 220 Or. App. at 573. As long as the complaint "may be reasonably interpreted to include an incident within the coverage of the policy, there is a duty to defend." *Marleau*, 333 Or. at 91 (quotation marks and citation omitted).

**II. Plaintiffs' Objection to the Evidence submitted by Great American in support of its Motion for Summary Judgment.**

Plaintiffs' Objection to Evidence is, in effect, a Motion to Strike N. Yamhill Station's "Monthly Fuel Loss Reports" on the ground that these reports submitted by Great American are irrelevant.

Great American has provided N. Yamhill Station's "Monthly Fuel Loss Reports" to demonstrate that the 2006 Release was ongoing throughout the latter half of 2006. As noted, however,

7   -   OPINION AND ORDER

when determining whether an insurer has a duty to defend, the court looks exclusively to the policy and the complaint in the underlying action. *Western Equities*, 184 Or. App. at 433. *See also Gebrayel v. Transamerica Title Ins. Co.*, 132 Or. App. 271, 275 (1995)("Any facts not alleged in the complaint are irrelevant in determining the existence of the duty to defend.").

Accordingly, the Court on this record grants Plaintiffs' Motion and will not consider the "Monthly Fuel Loss Reports" for purposes of Great American's Motion for Summary Judgment.

**III. Great American's Motion for Summary Judgment.**

Great American contends it is entitled to a declaration that it does not have a duty to defend Plaintiffs against the Pitfidos' claims because the leak in the AST system commenced before the inception date of the Policy and, therefore, is not covered by the Policy.

**A.    The Policy terms.**

The parties do not dispute the relevant terms of the Policy.

The Policy issued to N. Yamhill Station is a claims-made pollution liability policy with effective dates of October 6, 2006, to October 6, 2007.  Under the Policy, the duty to defend attaches only when claims alleged against the insureds are covered by the Policy.  The Policy provides coverage for property damage and clean-up costs for any "environmental incident" occurring after the "retroactive date" of the Policy, which is

8   -   OPINION AND ORDER

October 6, 2006. The Policy defines an "environmental incident" as an

> emission, discharge, release, or escape of pollutants into or upon land, the atmosphere, or any watercourse or body of water, provided that such emission, discharge, release, or escape is from an "underground storage tank" at an "insured site." The "environmental incident" ends when that emission, discharge, release, or escape has been resolved.

The Policy includes the AST in its definition of "underground storage tank." The parties do not dispute the property is an "insured site."

### B. The Pitfidos' complaint.

The relevant portion of the Pitfidos' complaint provides:

> From July 2006 to November 2006 the [Plaintiffs] operated a gas station on the Property. Upon information and belief, [Plaintiffs] failed to address product loss and Releases during the time [they] operated the gas station.
>
> In November 2006 a Release of gasoline from the AST system on the Property was discovered (the "2006 Release"). . . .
>
> One cause of the 2006 Release was corrosion in the underground piping associated with the AST. Approximately 4,400 gallons of gasoline entered into the soil and groundwater between July 2006 and November 2006 and migrated offsite.

The parties do not dispute the "Release" or "Releases" described in the Pitfidos' complaint would fit within the definition of an "environmental incident."

### C. Analysis.

9 - OPINION AND ORDER

Great American contends the Pitfidos allege in their complaint that the 2006 Release is a single and ongoing "environmental incident" that began in July 2006, continued unabated through at least November 2006, and ultimately released 4,400 gallons of gasoline.

Great American's interpretation of the Pitfidos' complaint, however, is not necessarily the only reasonable interpretation. The Court notes the Pitfidos do not identify in their complaint a specific date on which the 2006 Release began but instead allege the Release occurred some time between July 2006 and November 2006, which is the period when Plaintiffs operated the gas station. In addition, the Pitfidos allege a Release was discovered in November 2006 and note one cause of that particular Release was corrosion in the AST's underground piping. That language suggests this Release could have been one of many. Moreover, in their complaint the Pitfidos refer to "Release<u>s</u>" occurring throughout Plaintiffs' operation of the gas station, some of which may have occurred after October 6, 2006. The Pitfidos' complaint, therefore, may be interpreted as alleging that an environmental incident occurred after the inception date of the Policy. *See Marleau*, 333 Or. at 91 (duty to defend exists when the complaint can be reasonably interpreted to include an incident within the coverage of the policy).

The Court, therefore, concludes on this record that the

10   -   OPINION AND ORDER

Pitfidos' complaint "may be reasonably interpreted to include an incident within the coverage of the policy," and, therefore, Great American has a "a duty to defend." *Id*. Accordingly, the Court denies Great American's Motion.

## CONCLUSION

For these reasons, the Court **GRANTS** the Objections (#25) to Evidence of Plaintiffs N. Yamhill Station and Ward for purposes of this Motion and **DENIES** the Motion (#14) for Summary Judgment of Defendant Great American.

IT IS SO ORDERED.

DATED this 20th day of May, 2009.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

11   -   OPINION AND ORDER